Richard S. Swartz (PA #80850)
Justin L. Swidler (PA #205954)
1878 Marlton Pike East, Suite 10
Cherry Hill, NJ 08003
Phone: (856) 685-7420

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| **PIERRE CORMIER, DAVID HARMON, MICHAEL SOWA, and JOHANNES STOLVOORT,** *on behalf of themselves and all those similarly situated,*<br><br>**Plaintiffs,**<br><br>**vs.**<br><br>**WESTERN EXPRESS, INC. and JOHN DOES 1-10,**<br><br>**Defendants.** | **COLLECTIVE & CLASS ACTION COMPLAINT**<br><br>**JURY DEMANDED**<br><br><br><br>**Case No:** _____<br><br>**Judge:** _____ |

## COLLECTIVE & CLASS ACTION COMPLAINT

1.      Plaintiffs Pierre Cormier, David Harmon, Michael Sowa, and Johannes Stolvoort ("Named Plaintiffs"), on behalf of themselves and those similarly situated ("Collective Action Plaintiffs"), by and through undersigned counsel, hereby complain as follows against Defendants Western Express, Inc. and John Does 1-10 (collectively, "Defendants").

### INTRODUCTION

2.      Named Plaintiffs initiate the instant action to redress violations by Defendants of the Fair Labor Standards Act ("FLSA"). Defendants intentionally failed to compensate Named

1

Plaintiffs and Collective Action Plaintiffs for wages earned while in the employ of Defendants. As a result of Defendants' unlawful actions, Named Plaintiffs and Collective Action Plaintiffs have been harmed.

3.     Additionally, Named Plaintiffs Cormier and Sowa bring this action to redress violations by Defendants of the California Labor Code.  Defendants intentionally failed to compensate Named Plaintiffs Cormier, Sowa, and California employees similarly situated to them (these similarly situated individuals shall be referred to as "California Plaintiffs") for wages earned while in the employ of Defendants.  As a result of Defendants' unlawful actions, Named Plaintiffs Cormier, Sowa, and California Plaintiffs have been harmed.

## JURISDICTION AND VENUE

4.     This Court, in accordance with 28 U.S.C. § 1331, has jurisdiction over Named Plaintiffs' and Collective Action Plaintiffs' federal claims because this civil action arises under a law of the United States and seeks redress for violations of a federal law, 29 U.S.C. § 201 *et seq*. This Court has supplemental jurisdiction over Named Plaintiff Cormier's, Named Plaintiff Sowa's, and California Plaintiffs' related state law claims because such claims arise out of the same circumstances and are based upon a common nucleus of operative facts as the federal claims being asserted herein.

5.     This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice.

2

6.     Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this judicial district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district and Defendants are deemed to reside where it is subject to personal jurisdiction, rendering Defendants residents of this judicial district.

## PARTIES

7.     The foregoing paragraphs are incorporated herein as if set forth in full.

8.     Named Plaintiffs are adult individuals residing at the following addresses: PIERRE CORMIER, 661 Marion Road, Chatham, VA 24531; DAVID HARMON, 5401 Sunny Slope Rd, Maple Heights, OH 44137; MICHAEL SOWA, 3710 Rebecca Lane, Colorado Springs, CO 80917; JOHANNES STOLVOORT, 1040 E Garfield Avenue, Decatur, IL 62526.

9.     Defendant Western Express, Inc. ("Defendant Western") is a Tennessee Corporation headquartered at 7135 Centennial Place, Nashville, TN 37209.   Defendant Western conducts business throughout the United States, and has a terminal located in Fontana, California, among other states.

10.     Defendant Western is engaged in the hauling and delivery of freight across the United States.

11.     Defendants John Doe 1 through John Doe 5 are presently unknown persons who, directly or indirectly, directed, aided, abetted, and/or assisted with creating and/or executing the policies and practices of Defendants which resulted in Defendants' failing to pay Named Plaintiffs, Collective Action Plaintiffs, and California Plaintiffs proper compensation pursuant to the FLSA and various state laws including the California Labor Code.

3

12.     Defendants John Doe 6 through John Doe 10 are presently unknown persons who had control over processing payroll regarding Named Plaintiffs, Collective Action Plaintiffs, and California Plaintiffs.

13.     At all times relevant herein, Defendants acted by and through their agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant Western.

## COLLECTIVE ACTION ALLEGATIONS

13.     The foregoing paragraphs are incorporated herein as if set forth in their entirety.

14.     Named Plaintiffs bring this action for violations of the FLSA as a collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), on behalf of Collective Action Plaintiffs.

15.     Specifically, Named Plaintiffs seek to represent a nationwide class of all persons who worked or work for Defendant Western as over-the-road truck drivers and who were/are subject to Defendant Western's unlawful pay practices and policies at any point from three years prior to the filing of the instant matter to the present (members of this putative class are referred to as "Collective Action Plaintiffs").

16.     Named Plaintiffs' claims are typical of the claims of Collective Action Plaintiffs, because Named Plaintiffs, like all Collective Action Plaintiffs, were employees of Defendant Western whom Defendant Western failed to pay minimum wage as required by the FLSA in the last three years.

17.     Named Plaintiffs will fairly and adequately protect the interests of Collective

4

Action Plaintiffs, because Named Plaintiffs' interests are coincident with, and not antagonistic to, those of the class. Named Plaintiffs have retained counsel with substantial experience in the prosecution of claims involving employee wage disputes.

18. No difficulties are likely to be encountered in the management of this collective action that would preclude its maintenance as a collective action. The class will be easily identifiable from Defendant Western's records.

19. Similarly situated employees are known to Defendant Western, are readily identifiable by Defendant Western, and can be located through Defendant Western's records. Named Plaintiffs do not know the exact size of the potential class, as such information is in the exclusive control of Defendant Western; however, on information and belief, the number of potential class members is estimated to be in the thousands.

20. Questions of law and fact that are common to the members of the class predominate over questions that affect only individual members of the class. Among the questions of law and fact that are common to the class is whether Defendant Western failed to pay the putative class the federal minimum wage for all hours worked, by (1) Defendant Western failing to compensate newly hired drivers at least the federal minimum wage for time spent during its initial orientation program ("Defendant Western's Initial Orientation Program"); (2) Defendant Western failing to compensate its drivers at least the federal minimum wage for travel time spent traveling during normal business hours; (3) Defendant Western failing to compensate newly hired drivers at least the federal minimum wage for all compensable time worked during its over-the-road training program ("Defendant Western's Training Program"); and (4) Defendant Western failing to

compensate its drivers at least the federal minimum wage for all compensable hours worked.

21.     Collective Action Plaintiffs should be broken into 4 subclasses consisting of the following (most class members will be members of multiple subclasses and many will be members of all subclasses):

a.     Initial Orientation Plaintiffs: Members of this subclass are similarly situated because all Initial Orientation Plaintiffs were subject to the violations detailed under Cause of Action 1 of this Complaint within the last three years, in violation of the FLSA.  All Named Plaintiffs will act as representatives of this subclass.

b.     Training Plaintiffs:  Members of this subclass are similarly situated because all Training Plaintiffs were subject to the violations detailed under Cause of Action 2 of this Complaint within the last three years, in violation of the FLSA.  Named Plaintiff Cormier and Harmon will act as a representative of this subclass.

c.     Mileage Plaintiffs: Members of this subclass are similarly situated because all Mileage Plaintiffs were subject to the violations detailed under Cause of Action 3 of this Complaint within the last three years, in violation of the FLSA.  Named Plaintiffs Stolvoort, Harmon, and Sowa will act as a representative of this subclass.

d.     Travel-Time Plaintiffs:  Members of this subclass are similarly situated because all Travel-Time Plaintiffs were subject to the violations detailed under Cause of Action 4 of this Complaint within the last three years, in violation of the FLSA.  All Named Plaintiffs will act as representatives of this subclass.

22.     Therefore, Named Plaintiffs should be permitted to bring this action as a

collective action for and on behalf of themselves and those employees similarly situated, pursuant to the "opt-in" provisions of the FLSA, 29 U.S.C. § 216(b).

## CLASS ACTION ALLEGATIONS

13.     The foregoing paragraphs are incorporated herein as if set forth in their entirety.

14.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure and the Class Action Fairness Act of 2005, Named Plaintiffs Cormier and Sowa bring their claims for relief on behalf of themselves and those similarly situated.

15.     Specifically, Named Plaintiffs Cormier and Sowa ("Named California Plaintiffs") seek to represent a class of all persons who worked or work for Defendants as an over-the-road truck driver in California in the last four years who were/are subjected to the violations of the California Labor Code described herein (hereinafter, "California Plaintiffs").

16.     The putative class is so numerous that the joinder of all class members is impracticable.  Named California Plaintiffs do not know the exact size of the class, as such information is in the exclusive control of Defendants; however, on information and belief, the number of potential class members is estimated to be in the thousands.

17.     Named California Plaintiffs' claims are typical of the claims of the putative class members, because Named California Plaintiffs, like all California Plaintiffs, were employees of Defendant Western in California who were denied minimum wage for certain compensable hours worked and who were denied accurate wage statements providing the total number of hours worked each workweek, as required by the California Labor Code.

18.     Named California Plaintiffs will fairly and adequately protect the interests of the

7

putative class because Named California Plaintiffs' interests are coincident with, and not antagonistic to, those of the California Plaintiffs. Named California Plaintiffs have retained counsel with substantial experience in the prosecution of claims involving employee wage disputes.

19.     No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action. The class will be easily identifiable from Defendants' records.

20.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Such treatment will allow all similarly situated individuals to prosecute their common claims in a single forum simultaneously. Prosecution of separate actions by individual members of the putative class would create the risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for Defendants. Furthermore, the amount at stake for individual putative class members may not be great enough to enable all of the individual putative class members to maintain separate actions against Defendants.

21.     Questions of law and fact that are common to the members of the class predominate over questions that affect only individual members of the class. Among the questions of law and fact that are common to the class is whether Defendant Western failed to pay the putative class the California minimum wage for all hours worked, by (1) Defendant Western failing to compensate its newly hired drivers at least the California minimum wage for time spent during Defendant Western's Initial Orientation Program; (2) Defendant Western failing to compensate newly hired drivers at least the California minimum wage for travel time spent

traveling during normal business hours; (3) Defendant Western failing to compensate its newly hired drivers at least the California minimum wage for all compensable time worked during Defendant Western's Training Program; and (4) Defendant Western failing to compensate its drivers at least the California minimum wage for all compensable hours worked.

22.     Therefore, Named California Plaintiffs should be should be permitted to bring this action as a class action for and on behalf of themselves and those employees similarly situated, pursuant to Federal Rule of Civil Procedure 23.

## FACTUAL BACKGROUND

23.     The foregoing paragraphs are incorporated herein as if set forth in full.

24.     Upon information and belief, Defendant Western has maintained the unlawful pay system described herein for at least the last three years.

25.     Named Plaintiffs, Collective Action Plaintiffs, and California Plaintiffs were subjected to an unlawful compensation system to which Defendants subjected all of their over-the-road drivers as described *infra*.

26.     Named Plaintiffs, Collective Action Plaintiffs, and California Plaintiffs were all over-the-road commercial truck drivers employed by Defendant Western and were all subjected to the policies discussed herein within the last three years.

27.     Named Plaintiffs were all hired by Defendant Western in the last three years and were all subjected to the violations asserted herein within the last three years.

## CAUSE OF ACTION NO. 1
## FAILURE TO PAY MINIMUM WAGE DURING DEFENDANT WESTERN'S INITIAL ORIENTATION PROGRAM

9

28. The foregoing paragraphs are incorporated herein as if set forth in full.

29. Defendant Western required its newly hired drivers to attend a multi-day orientation program at its locations throughout the United States, including at its locations in Fontana, California and Nashville, Tennessee, among other locations.

30. During this initial orientation program, Defendant Western required Named Plaintiffs and Initial Orientation Plaintiffs to attend classes regarding the rules and procedures of Defendant Western. The classes lasted approximately 9-10 hours per day.

31. In addition to attending the orientation classes, Defendant Western required Named Plaintiffs and Initial Orientation Plaintiffs to meet with Defendant Western's employees and agents about the rules, practices, and procedures of Defendant Western outside of class.

32. Defendant Western informed Named Plaintiffs and Initial Orientation Plaintiffs that upon successful completion of the orientation program, they were guaranteed a job at Defendant Western.

33. Upon successful completion of the multi-day orientation program, Defendant Western informed Named Plaintiffs and Initial Orientation Plaintiffs that they were "hired."

34. Defendant Western failed to pay Named Plaintiffs and Initial Orientation Plaintiffs at least minimum wage during the orientation period.

35. Consistent with Defendant Western's policies, upon his initial hiring by Defendant Western, Named Plaintiff Cormier was required to attend an approximately week-long orientation program in Nashville, Tennessee. During this orientation program, Named Plaintiff Cormier attended orientation class every day for approximately one week which lasted 9-10 hours per day.

10

Named Plaintiff Cormier was further required to engage in other compensable work during this period, including meeting with Defendant Western's employees and agents about the rules, practices, and procedures of Defendant Western outside of class. Named Plaintiff Cormier was not paid for this orientation period.

36. Consistent with Defendant Western's policies, upon his initial hiring by Defendant Western, Named Plaintiff Harmon was required to attend an approximately week-long orientation program in Nashville, Tennessee. During this orientation program, Named Plaintiff Harmon attended orientation class every day for approximately one week which lasted 9-10 hours per day. Named Plaintiff Harmon was further required to engage in other compensable work during this period, including meeting with Defendant Western's employees and agents about the rules, practices, and procedures of Defendant Western outside of class. Named Plaintiff Harmon was not paid for this orientation period.

37. Consistent with Defendant Western's policies, upon his initial hiring by Defendant Western, Named Plaintiff Sowa was required to attend an approximately week-long orientation program in Fontana, California. During this orientation program, Named Plaintiff Sowa attended orientation class every day for approximately one week which lasted 9-10 hours per day. Named Plaintiff Sowa was further required to engage in other compensable work during this period, including meeting with Defendant Western's employees and agents about the rules, practices, and procedures of Defendant Western outside of class. Named Plaintiff Sowa was not paid for this orientation period.

38. Consistent with Defendant Western's policies, upon his initial hiring by Defendant

11

Western, Named Plaintiff Johannes Stolvoort was required to attend an approximately week-long orientation program in Nashville, Tennessee. During this orientation program, Named Plaintiff Stolvoort attended orientation class every day for approximately one week which lasted 9-10 hours per day. Named Plaintiff Stolvoort was further required to engage in other compensable work during this period, including meeting with Defendant Western's employees and agents about the rules, practices, and procedures of Defendant Western outside of class. Named Plaintiff Stolvoort was not paid for this orientation period.

**CAUSE OF ACTION NO. 2**
**FAILURE TO PAY MINIMUM WAGE DURING DEFENDANT WESTERN'S TRAINING PROGRAM**

39.     The foregoing paragraphs are incorporated herein as if set forth in full.

40.     Following the Initial Orientation Period, Defendants required certain drivers to participate in an over-the-road training program lasting at least 30 days.

41.     Named Plaintiffs Cormier and Harmon were required to participate in the over-the-road training program.

42.     During Defendant Western's Training Program, Defendant Western required Named Plaintiffs Cormier, Harmon, and Training Plaintiffs to train with an over-the-road truck driver of Defendant Western.

43.     Defendant Western compensated Named Plaintiffs Cormier, Harmon, and Training Plaintiffs a flat salary for all work performed while over-the-road during Defendant Western's Training Program.

44.     Defendant Western compensated Named Plaintiff Cormier $374.99 per workweek

12

during Defendant Western's Training Program.

45.     Defendant Western Compensated Named Plaintiff Harmon $374.99 per workweek during Defendant Western's Training Program.

46.     Upon information and belief, Defendant Western compensated Training Plaintiffs a weekly salary of approximately $375 per workweek.

47.     During Defendant Western's Training Program, Named Plaintiffs Cormier, Harmon, and Training Plaintiffs reported their status to Defendant Western via the Qualcomm computer in the truck.

48.     Upon information and belief, the Qualcomm messages were received by Defendant Western in a single centralized location in Tennessee.

49.     During Defendant Western's Training Program, Named Plaintiffs Cormier, Harmon, and Training Plaintiffs were required to remain over-the-road in or in the general proximity of their assigned truck more than 24 consecutive hours.

50.     During Defendant Western's Training Program, Named Plaintiffs Cormier, Harmon, and Training Plaintiffs were required to remain on assignment continually for more than 24 hours. (*See* 29 C.F.R. § 785.22).

51.     Per 29 C.F.R. § 785.22, the maximum amount of time an employer may dock an employee who is on assignment for more than 24 hours for sleeping and meal periods is 8 hours per day.  The remaining amount of time (16 hours per day) is work time and must be paid.

52.     Moreover, during Defendant Western's Training Program, Named Plaintiffs Cormier, Harmon, and Training Plaintiffs regularly worked more than 16 hours per day because

they were required to (1) drive the truck; (2) remain in the truck while the truck was actually moving so that they could assist in transporting the cargo; (3) complete modules via the Qualcomm during times the truck was not moving so that they could complete their training; (4) wait for cargo while being limited to the truck and not being permitted to leave the truck; (5) fuel up the vehicle and perform routine maintenance to same; and (6) remain inside the truck when stopped overnight to log time in the sleeper berth and to protect Defendant Western's and its customer's property.

53.     Per the applicable federal minimum wage, Defendant Western was required to compensate Named Plaintiffs Cormier, Harmon, and Training Plaintiffs at least $116 per day ($7.25 x 16 hours) for each day spent over the road.

54.     While over-the-road, Named Plaintiffs Cormier, Harmon, and Training Plaintiffs were confined to the general vicinity of their assigned truck for more than 24 consecutive hours.

55.     Named Plaintiff Cormier spent 7 days over-the-road each workweek during the time they worked in Defendant Western's Training Program.

56.     By way of example, during the workweek of November 5 – November 11, 2013:

   a.   Named Plaintiff Cormier was over-the-road the entire 7-day period on a continuous tour of duty

   b.   Throughout the entire 7-day period, Named Plaintiff Cormier was required to remain on or near the truck and under the control of Defendant Western to assist in driving cargo along with his trainer/co-driver, Codie Rogers.

   c.   Even when the truck was not moving, Named Plaintiff Cormier was required to remain in or near the truck to protect Defendant Western's truck and its cargo.

14

d. Throughout the 7-day period, Named Plaintiff Cormier's depot location was Fontana, California.

e. During the 7-day period, Named Plaintiff Cormier logged 53 hours and 59 minutes as "on duty" per the Department of Transportation regulations.

f. Additionally, Named Plaintiff Cormier worked significantly more than 53 hours and 59 minutes because, even when logged "off duty" per DOT regulations, he was entitled to compensation because he was engaging in compensable work by virtue of being on a continuous tour of duty lasting more than 24 hours and because he was engage in mandatory and compensable travel time.

g. During the 7-day period, Defendant Western paid Named Plaintiff Cormier a salary of $374.99 for the workweek (which equivalent of 51.72 hours of minimum wage at $7.25 per hour per the FLSA or 46.87 hours of minimum wage under California law).

57. Named Plaintiff Harmon participated in over-the-road training during March through June of 2013 and was likewise paid $374.99 per workweek, regardless of hours worked.

58. Named Plaintiff Harmon worked significantly more than 52 hours per workweek while he was in over-the-road training, resulting in payment below minimum wage.

59. Named Plaintiff Cormier and California Training Plaintiffs worked for Defendant Western during the training program out of Fontana, California.

60. Training Plaintiffs generally spend 7 days over-the-road each workweek during the time they worked in Defendant Western's Training Program.

15

61.     Accordingly, Named Plaintiffs Cormier, Harmon, and Training Plaintiffs have been injured as a result of Defendants' unlawful policy to pay a flat salary to drivers during over-the-road training which fails to pay minimum wage for all hours worked.

## CAUSE OF ACTION NO. 3
## FAILURE TO PAY MINIMUM WAGE FOR ALL HOURS WORKED BY MILEAGE PLAINTIFFS

62.     The foregoing paragraphs are incorporated herein as if set forth in full.

63.     Drivers who are not required to complete Defendant Western's Training Program and/or drivers who have completed the program successfully are provided a truck by Defendant Western and were paid a per-mileage rate for each mileage driven.

64.     Named Plaintiff Harmon completed training and worked for Defendant Western as an over-the-road driver in 2013.

65.     Named Plaintiff Sowa worked for Defendant Western as an over-the-road driver in 2013.

66.     Named Plaintiff Stolvoort worked for Defendant Western as an over-the-road driver in 2013.

67.     Defendant Western paid Named Plaintiff Harmon between 14 cents and 22 cents per mile.

68.     Defendant Western generally paid Named Plaintiff Sowa 18 cents per mile.

69.     Defendant Western paid Named Plaintiff Stolvoort 14 cents per mile.

70.     Defendant paid Named Plaintiffs Harmon, Sowa, Stolvoort, and Mileage Plaintiffs low mileage rates which, when averaged over the total number of hours worked per workweek,

equated to less than minimum wage.

71.     Named Plaintiffs Harmon, Sowa, Stolvoort, and Mileage Plaintiffs reported their status to Defendant Western via the Qualcomm computer in the truck.

72.     During this time, Named Plaintiffs Harmon, Sowa, Stolvoort, and Mileage Plaintiffs were required to remain on assignment continually for more than 24 hours. (*see* 29 C.F.R. § 785.22)

73.     Per 29 C.F.R. § 785.22, the maximum amount of time an employer may dock an employee who is on assignment for more than 24 hours for sleeping and meal periods is 8 hours per day.  The remaining amount of time (16 hours per day) is work time and must be paid.

74.     While over-the-road, Named Plaintiffs Harmon, Sowa, Stolvoort, and Mileage Plaintiffs were confined to the general vicinity of their assigned truck for more than 24 consecutive hours.

75.     Per the applicable federal minimum wage, Defendant Western was required to compensate Named Plaintiffs Harmon, Sowa, Stolvoort, and Mileage Plaintiffs at least $116 per day ($7.25 x 16 hours).

76.     Nevertheless, Defendant Western failed to implement a proper fail-safe compensation system to ensure that Named Plaintiffs Harmon, Sowa, Stolvoort, and Mileage Plaintiffs were paid at least the minimum wage during workweeks where, for various reasons, they did not log enough miles to receive over the minimum wage by virtue of their mileage rate.

77.     By way of example, during the workweek of November 5 – November 11, 2013:

    a.  Named Plaintiff Stolvoort was over-the-road the entire 7-day period on a

continuous tour of duty

    b.  Throughout the entire 7-day period, Named Plaintiff Stolvoort was required to remain on or near the truck and under the control of Defendant Western to transport and protect cargo for Defendant Western.

    c.  Even when the truck was not moving, Named Plaintiff Stolvoort was required to remain in or near the truck to protect Defendant Western's truck and its cargo.

    d.  During the 7-day period, Named Plaintiff Stolvoort logged 39 hours and 6 minutes as "on duty" per the Department of Transportation regulations.

    e.  Additionally, Named Plaintiff Stolvoort worked significantly more than 39 hours and 7 minutes because, even when logged "off duty" per DOT regulations, he was entitled to compensation because he was engaging in compensable work by virtue of being on a continuous tour of duty lasting more than 24 hours.

    f.  During the 7-day period, Defendant Western paid Named Plaintiff Stolvoort $181.72 in gross earnings for the workweek for driving 1,298 miles (which is equivalent of 25.06 hours of minimum wage at $7.25 per hour per the FLSA).

78.    By way of further example, during workweek May 14 - May 20, 2013:

    a.  Named Plaintiff Sowa was over-the-road the entire 7-day period on a continuous tour of duty

    b.  Throughout the entire 7-day period, Named Plaintiff Sowa was required to

18

remain on or near the truck and under the control of Defendant Western to transport and protect cargo for Defendant Western.

c. Even when the truck was not moving, Named Plaintiff Sowa was required to remain in or near the truck to protect Defendant Western's truck and its cargo.

d. Throughout the 7-day period, Named Plaintiff Sowa's depot location was Fontana, California.

e. During the 7-day period, Named Plaintiff Sowa received pay for driving 1,016 miles.

f. Named Plaintiff Sowa was paid $.18 per mile for 673 miles and $.22 per mile for 335 miles.

g. Accordingly, Named Plaintiff Sowa was paid $194.84 in gross pay for the workweek.

h. Named Plaintiff Sowa worked significantly more than 30 hours during the workweek, resulting in pay below the federal minimum wage and the California minimum wage.

79. By way of further example during workweek July 30 – August 5, 2013:

a. Named Plaintiff Harmon was over-the-road the entire 7-day period on a continuous tour of duty

b. Throughout the entire 7-day period, Named Plaintiff Harmon was required to remain on or near the truck and under the control of Defendant Western to transport and protect cargo for Defendant Western.

19

c. Even when the truck was not moving, Named Plaintiff Harmon was required to remain in or near the truck to protect Defendant Western's truck and its cargo.

d. During the 7-day period, Named Plaintiff Harmon received pay for driving 1,633 miles.

e. Named Plaintiff Sowa was paid $.14 per mile for 1,023 miles and $.22 per mile for 556 miles.

f. Accordingly, Named Plaintiff Sowa was paid $273.10 in gross pay for the workweek.

g. Named Plaintiff Sowa worked significantly more than 40 hours during the workweek, resulting in pay below the federal minimum wage.

80. Because of the failure of Defendant Western to pay Named Plaintiffs Harmon, Sowa, Stolvoort, and Mileage Plaintiffs based upon hours worked, and because the per-mile pay resulted in pay below minimum wage, Defendant Western regularly paid Named Plaintiffs Harmon, Sowa, Stolvoort and Mileage Plaintiffs below the federal minimum wage.

## CAUSE OF ACTION NO. 4
## FAILURE TO PAY FOR COMPENSABLE TRAVEL TIME

81. The foregoing paragraphs are incorporated herein as if set forth in full.

82. Named Plaintiffs and Travel-Time Plaintiffs were required to engage in significant amounts of travel during regular business hours that kept them away from home overnight (including but not limited to, *e.g.*, the orientation program).

83. Named Plaintiffs and Travel-Time Plaintiffs were regularly required to travel to

locations that required that they stayed overnight and away from home.

84.     Named Plaintiffs and Travel-Time Plaintiffs completed this travel during regular business hours.

85.     Defendant Western failed to pay Named Plaintiffs and Travel-Time Plaintiffs any compensation for such travel time.

86.     Per 29 CFR §785.39, travel that keeps an employee away from home overnight which is completed during regular working hours is work time and must be paid.

87.     As a result of Defendants' unlawful conduct, Named Plaintiffs and Travel-Time Plaintiffs have been harmed.

## COUNT I
## Violations of the Fair Labor Standards Act
### (Named Plaintiffs and Collective Action Plaintiffs v. Defendants)
### (Minimum Wage)

88.     The foregoing paragraphs are incorporated herein as if set forth in full.

89.     At all times relevant herein, Defendants were and continue to be an "employer" within the meaning of the FLSA.

90.     At all times relevant herein, Named Plaintiffs and Collective Action Plaintiffs were/are "employees" within the meaning of the FLSA.

91.     The FLSA requires employers, such as Defendants, to minimally compensate employees, such as Named Plaintiffs and Collective Action Plaintiffs, at the federal minimum wage rate for each hour worked.

92.     As a result of Defendants' company-wide practices and policies of paying its

21

employees below the minimum wage for all hours worked each workweek, Named Plaintiffs and Collective Action Plaintiffs have been harmed.

93.     John Does 1-5 are jointly and individually liable for Defendant Western's failure to compensate Named Plaintiffs and Collective Action Plaintiffs at least the federal minimum wage for all hours worked because they directly or indirectly, directed, aided, abetted, and/or assisted with creating and/or executing the policies and practices which violated the FLSA.

94.     John Does 6-10 are jointly and individually liable for Defendant Western's failure to compensate Named Plaintiff and Collective Action Plaintiffs at least the federal minimum wage for all hours worked because they had control over processing payroll for Named Plaintiffs and Collective Action Plaintiffs.

95.     Defendants willfully failed to compensate Named Plaintiffs and Collective Action Plaintiffs the federal minimum wage.

96.     As a result of Defendants' failure to compensate Named Plaintiffs and Collective Action Plaintiffs at the federal minimum wage rate, Defendants have violated and continue to violate the FLSA.

**COUNT II**
**Violations of the California Labor Code**
**(Named California Plaintiffs and California Plaintiffs v. Defendants)**
**(Minimum Wage)**

97.     The foregoing paragraphs are incorporated herein as if set forth in full.

98.     Named California Plaintiffs and California Plaintiffs were employed out of California because their depot location was based in Fontana, California, and decisions regarding

their employment, loads, duties, and assignments were made in California.

99.     As a result of Defendants' company-wide practices and policies to their employees in California of paying employees below the California minimum wage for all hours worked each workweek, Named California Plaintiffs and California Plaintiffs were denied minimum wage required by the California Labor Code.

100.    Defendants further violated the California Labor Code by failing to provide California Plaintiffs with accurate wage statements providing the total number of hours worked each workweek.

101.    As a result of Defendants' unlawful conduct, Named California Plaintiffs and California Plaintiffs have been harmed.

**WHEREFORE**, Named Plaintiffs, Collective Action Plaintiffs, and California Plaintiffs pray that this Court enter an Order:

1) Certifying the instant action as a "collective action" pursuant to the Fair Labor Standards Act;

2) Certifying the instant action as a "class action" pursuant to Federal Rule of Civil Procedure 23;

3) Enjoining Defendant Western from continuing to maintain its illegal policy, practice, or customs in violation of applicable law;

4) Providing that Defendant Western is to compensate, reimburse, and make Named Plaintiffs and Collective Action Plaintiffs whole for any and all pay and benefits they

23

would have received had it not been for Defendants' illegal actions, including but not limited to past lost earnings.

5) Awarding Named Plaintiffs and Collective Action Plaintiffs liquidated damages pursuant to the laws they are suing under in an amount equal to the actual damages in this case;

6) Awarding Named California Plaintiffs and California Plaintiffs liquidated and/or punitive damages as permitted by law;

7) Awarding Named Plaintiffs and Collective Action Plaintiffs the costs and expenses of this action and reasonable legal fees as provided by applicable law; and,

8) Awarding Named Plaintiffs and Collective Action Plaintiffs all other relief as the Court deems appropriate and just.

Respectfully Submitted,


**SWARTZ SWIDLER, LLC**

*/s Richard S. Swartz*
Richard S. Swartz, Esq.
Justin L. Swidler, Esq.
1878 Marlton Pike East, Suite 10
Cherry Hill, NJ 08003
Tel: 856-685-7420
Fax: 856-685-7417
Attorneys for Plaintiffs

*Pro Hac Vice Motions Pending*

DATED: January 10, 2014